1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JERRY MANNING,

                              Plaintiff,

        v.

DOUG WADDINGTON,

                              Defendant.

No. C10-5663 RJB/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  January 28, 2011**

        Before the court is the motion for summary judgment of Defendant Douglas Waddington. ECF No. 11.  Plaintiff Jerry Manning did not file a response.  His failure to do so may be deemed by the court as an admission that the Defendant's motion for summary judgment has merit.  CR 7(b)(2).  Defendant argues that Plaintiff's claims should be dismissed because he has failed to exhaust administrative remedies and because Defendant Waddington did not personally participate in the alleged constitutional deprivation.

        Having carefully reviewed the motion, complaint, and balance of the record, and viewing the evidence in the light most favorable to Mr. Manning, the undersigned recommends that the Defendant's motion for summary judgment be granted because Plaintiff has failed to exhaust his administrative remedies.   The court does not address the merits of Plaintiff's claims as it finds that he has failed to exhaust his administrative remedies.

REPORT AND RECOMMENDATION - 1

**STATEMENT OF FACTS**

**A.      Plaintiff's Claim**

Mr. Manning alleges that he was caught in an automatic door at the Washington

Correction Center (WCC) for approximately three to four minutes and that this caused him

extreme pain.  ECF No. 4, p. 3.  He alleges that he was on his way to the gym and that no

warning was given before the door closed on him.  Mr. Manning states that he has previously

had hip replacement surgery and believes that as a result of this incident, he will have to undergo

a second hip replacement surgery.  *Id.*

The only named defendant is Doug Waddington, the former Superintendent of the WCC.

Mr. Waddington had no involvement in the incident giving rise to Mr. Manning's complaint.

ECF No. 12, p. 1.  Mr. Waddington states in his declaration that he has no knowledge of whether

Mr. Manning was caught and injured in an automatic door at WCC and was not personally

involved in any way as he does not operate the door controls in the WCC.  *Id.*

**B.      Grievance Process**

The Washington Offender Grievance Program (OGP) has been in existence since the

early 1980's and was implemented on a Department-wide basis in 1985.  ECF No. 13, p. 2, ¶ 3

(Declaration of Ron Frederick).   The DOC's grievance system is well known to inmates.  *Id.* at ¶

10.  Over 20,000 grievances are filed per year system wide.  *Id.*

Under Washington's OGP, an offender may file a grievance over a wide range of aspects

of his/her incarceration.  *Id.* at ¶ 4.  Inmates may file grievances challenging: (1) DOC institution

policies, rules and procedures; (2) the application of such policies, rules and procedures; (3) the

lack of policies, rules or procedures that directly affect the living conditions of the offender; (4)

the actions of staff and volunteers; (5) the actions of other offenders; (6) retaliation by staff for

REPORT AND RECOMMENDATION - 2

filing grievances; and (7) physical plant conditions.  An offender may not file a grievance challenging: (1) state or federal law; (2) court actions and decisions; (3) Indeterminate Sentence Review Board actions and decisions; (4) administrative segregation placement or retention; (5) classification/unit team decisions; (6) transfers; (7) disciplinary actions; and (8) several other aspects of incarceration.  *Id.*

The OGP provides a wide range of remedies available to inmates.  *Id.* at ¶ 5.  These remedies are outlined at OGP Manual page 27 and include: (1) restitution of property or funds; (2) correction of records; (3) administrative actions; (4) agreement by department officials to remedy an objectionable condition within a reasonable time; and (5) a change in a local or department policy or procedure.  *Id.*

The grievance procedure consists of four levels of review.  *Id.* at ¶ 6.  At Level 0, the complaint or informal level, the offender writes a complaint; the grievance coordinator then pursues informal resolution of the issue, returns the complaint to the offender for additional information, or accepts the complaint and processes it as a formal grievance.  *Id.*  At Level I, the local grievance coordinator responds to the issues raised by the offender.  *Id.*  If the offender is not satisfied with the response to his Level I grievance, he may appeal the grievance to Level II. *Id.*  All appeals and initial grievances received at Level II are investigated, and the prison superintendent responds.  *Id.*  If the offender is still not satisfied with the response, he may make a Level III appeal to the Department headquarters, where the issue is reinvestigated and administrators respond.  *Id.*

An institution grievance coordinator processing an original complaint by an offender may also reject the grievance as "not grievable."  OGP Manual page 20 states that the Grievance Program Manager will automatically review all complaints deemed not grievable and either

REPORT AND RECOMMENDATION - 3

1  concur with or reverse those decisions as appropriate. *Id.* at ¶ 7. If the Grievance Program

2  Manager concurs with the initial decision of the grievance coordinator, offenders have the option

3  of appealing the decision to the Program Manager and providing further information. This has

4  happened on a number of occasions in the past and has resulted in some of the decisions being

5  reversed. *Id.* at ¶ 8.

6          Mr. Frederick states that he has reviewed the DOC's official grievance records

7  concerning Mr. Manning and has determined that Mr. Manning has not filed any grievances

8  related to doors closing on him on April 17, 2010. *Id.* at ¶ 11. If such an incident had occurred,

9
10  it is grievable. *Id.*

11          Mr. Manning stated in his complaint that there is a grievance procedure available at the

12  Larch Mountain Corrections Center, where he is currently incarcerated, but he did not file a

13  grievance because the incident "happened before a grievance was necessary." ECF No. 4, p. 2.

14  Mr. Manning also indicated on his complaint that the grievance process was not completed. *Id.*

15

16                        **SUMMARY JUDGMENT STANDARD**

17          Summary judgment will be granted when there is no genuine issue as to any material fact

18  and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party

19  seeking summary judgment bears the initial burden of informing the court of the basis for its

20  motion, and of identifying those positions of the pleadings and discovery responses that

21  demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

22
23  317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

24          Where the moving party will have the burden of proof at trial, it must affirmatively

25  demonstrate that no reasonable trier of fact could find other than for the moving party.

26  *Calderone v. United States*, 788 F.2d 254, 259 (6th Cir. 1986). On an issue where the non-

REPORT AND RECOMMENDATION - 4

moving party will bear the burden of proof at trial, the moving party can prevail merely by

pointing out to the district court that there is an absence of evidence to support the non-moving

party's case. *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing

party must then set forth specific facts showing that there is some genuine issue for trial in order

to defeat the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S. Ct. 2502, 91 L.Ed.2d

202 (1986). The party opposing the motion must do more than simply show that there is some

metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475

U.S. 574, 586 (1986). "A plaintiff's belief that a defendant acted from an unlawful motive,

without evidence supporting that belief, is no more than speculation or unfounded accusation

about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco

Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

      The Ninth Circuit has expressly stated that "[n]o longer can it be argued that any

disagreement about a material issue of fact precludes the use of summary judgment. *California

Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.

1987), *cert. denied*, 484 U.S. 1006 (1988). A plaintiff cannot rest upon the allegations in his

complaint, but must establish each element of his claim with "significant probative evidence

tending to support the complaint." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809

F.2d 626, 630 (9th Cir. 1980). A party opposing a motion must present facts in evidentiary form

and cannot rest upon the pleadings. *Anderson*, 477 U.S. 242. Genuine issues of material fact are

not raised by conclusory or speculative allegations. *Lujan*, 497 U.S. 871. The purpose of

summary judgment is not to replace conclusory allegations in pleading form with conclusory

allegations in an affidavit. *Lujan*, 497 U.S. at 888; *cf. Anderson*, 477 U.S. at 249. Bare

REPORT AND RECOMMENDATION - 5

assertions unsupported by evidence do not preclude summary judgment. *California Architectural Bldg. Prods., supra.*

## DISCUSSION

**A.      Exhaustion of Remedies**

The Prison Litigation Reform Act of 1995 (PLRA) mandates that:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other federal law, by a prisoner confined in any jail, prison or other correctional facility, until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e [emphasis added].

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought to court." *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 918-19 (2007).  Inmates must exhaust their prison grievance remedies before filing suit if the prison grievance system is capable of providing any relief or taking any action in response to the grievance.  "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 740, 742 (2001).

The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 543 U.S. 516, 532 (2002).  The underlying premise is that requiring exhaustion "reduce[s] the quantity and improve[s] the quality of prisoner suits, [and] affords corrections officials an opportunity to address complaints internally. . . .  In some instances, corrective action taken in response to an inmate's grievance

REPORT AND RECOMMENDATION - 6

might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.*

Requiring proper exhaustion serves all of the goals of the rulings in *Nussle* and *Booth*, providing inmates an effective incentive to use the prison grievance system and thereby provides prisons with a fair opportunity to correct their own mistakes. *Woodford v. Ngo*, 548 U.S. 81, 93-94, 126 S. Ct. 2378 (2006). This is particularly critical to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Id.* at 94 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 491-492 [1973]). Courts have a limited role in reviewing the difficult and complex task of modern prison administration. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 85 [1987]) (urging a policy of judicial restraint as prison administration requires expertise, planning and the commitment of resources, all of which are the responsibility of the legislative and executive branches). *Turner v. Safley*, 482 U.S. at 84-85.

The Supreme Court reaffirmed this in *Woodford, supra.* In that case, the Court not only upheld the requirement that the inmates fully exhaust available administrative remedies, but it also held that those attempts needed to be done in a timely manner. *Id.* at 90-91.

The record reflects that a grievance procedure was available to Mr. Manning through which he could file grievances challenging aspects of his incarceration. ECF No. 13. The evidence reflects, however, that Mr. Manning did not file any grievance relating to the incident for which he filed this lawsuit.

Accordingly, the undersigned finds that Mr. Manning filed his lawsuit prematurely and that his claims should be dismissed without prejudice for failure to exhaust. Because the court

REPORT AND RECOMMENDATION - 7

finds that Mr. Manning has failed to exhaust his administrative remedies, the court lacks

discretion to resolve his claims on the merits. *See, e.g., Perez v. Wisconsin Dep't of Corr.*, 182

F.3d 532, 535 (7th Cir.1999) (suit filed by prisoner before administrative remedies have been

exhausted must be dismissed; district court lacks discretion to resolve claim on merits, even if

prisoner exhausts intra-prison remedies before judgment).  Therefore, the court does not address

the merits of Mr. Manning's claim or the personal participation of Defendant Waddington.

**CONCLUSION**

The undersigned recommends that Defendants' motion for summary judgment (ECF No.

11) be **GRANTED** and that the Mr. Manning's claims against Defendant Waddington be

**dismissed without prejudice** for failure to exhaust.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the

time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on

**January 28, 2011**, as noted in the caption.

DATED this _6th_ day of January, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8